No. 13586

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

DIEHL AND ASSOCIATES, INC.,
A Montana Corporation,

                        Plaintiff and Respondent,

        -vs-

L. R. HOUTCHENS,

                        Defendant and Appellant.

---

Appeal from:   District Court of the First Judicial District,
               Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

    For Appellant:

        Smith and Harper, Helena, Montana
        Charles A. Smith argued, Helena, Montana

    For Respondent:

        Kline and Niklas, Helena, Montana
        John R. Kline argued, Helena, Montana

---

                            Submitted:   April 27, 1977

                            Decided:   AUG - 8 1977

Filed: AUG - 8 1977

_Thomas J. Kearney_
                                    Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant appeals from the judgment of the district court, Lewis and Clark County, sitting without a jury. The district court entered judgment for plaintiff and decreed that plaintiff recover from defendant the sum of $5,450 in real estate broker's commissions plus reasonable attorney fees in the amount of $400.

Plaintiff initiated this action to recover real estate broker's commissions purportedly due and owing from the sale of two parcels of real property owned by defendant. On March 19, 1975, plaintiff and defendant entered into two listing agreements entitled REAL ESTATE BROKER'S EMPLOYMENT CONTRACT. One of the contracts was for the sale of 80 acres of agricultural land in the vicinity of Applegate Road (the Applegate property). The employment contract specified a purchase price of $50,000 cash or possible contract for deed with a sizeable down payment. The rate of brokerage commission was to be 10% of the stated selling price and the agreement was to expire on June 1, 1975.

The second listing agreement was for the sale of a trailer park referred to as the Broadwater Trailer Court. This employment contract specified a purchase price of $55,000 cash or terms of $15,000 down payment with the buyer assuming defendant's outstanding contract for deed, the balance to be financed by defendant on a contract for deed at 8% interest. The rate of brokerage commission was to be 6% of the stated selling price and the agreement was to expire on June 1, 1975.

On April 18, 1975, plaintiff obtained the signatures of Courtney B. Atlas and defendant on a buy/sell agreement entitled EARNEST MONEY RECEIPT AND AGREEMENT TO SELL AND PURCHASE. Atlas deposited $500 as earnest money toward the purchase of the Applegate property. The buy/sell agreement provided for a purchase

- 2 -

price of $35,000 with Atlas to pay $5,000 to defendant, assume defendant's existing contract for deed at existing terms, the balance of the purchase price to be financed by defendant on a contract for deed at 7-1/2% interest for 15 years. The buy/sell agreement specified the sale was to be closed on or before May 30, 1975, with a 30 day grace period allowed for the completion of financing, if necessary. The buy/sell agreement further provided that the earnest money was to be returned if the purchaser was unable to assume defendant's existing contract for deed at the existing terms; plaintiff was to receive a brokerage commission in the amount of 7% of the stated selling price; in the event of a forfeiture of the deposit, the deposit was to be used to pay the agent's incurred expenses related to the sale and the balance was to be apportioned to the seller and agent equally, provided the amount to the agent would not exceed the agreed commission.

Courtney B. Atlas failed to complete the purchase of the Applegate property by May 30, 1975. Atlas attempted to substitute his wife, Donna Jean Atlas, as the purchaser and upon defendant's refusal to accept Ms. Atlas as a purchaser the negotiations terminated.

On April 25, 1975, plaintiff obtained the signatures of Ray R. Buck and defendant on a similar buy/sell agreement entitled EARNEST MONEY RECEIPT AND AGREEMENT TO SELL AND PURCHASE. Buck deposited $200 as earnest money toward the purchase of the Broadwater Trailer Court. The buy/sell agreement provided for a purchase price of $50,000 with Buck to pay $10,000 as down payment, assume defendant's existing contract for deed, the balance of the purchase price to be financed by defendant on a contract for deed at 8% interest for 10 years. The buy/sell agreement further provided for the return of any earnest money in the

same manner as in the previous buy/sell agreement; plaintiff was to receive a brokerage commission in the amount of 6% of the stated selling price; and the earnest money was accepted "subject to the easement being granted and recorded for the disputed western boundary line of the above property".

The sale of the Broadwater Trailer Court was not completed by June 1, 1975. Defendant's reason for failing to consumate the sale to Buck was the failure to reconcile the boundary dispute, the condition precedent contained in the buy/sell agreement. No easement was granted or recorded, nor was the lawsuit settled prior to the June 1, 1975, termination date of the buy/sell agreement.

On July 3, 1975, plaintiff filed his original complaint which was subsequently amended on September 12, 1975. In the amended complaint plaintiff sought to recover $3,000 as the brokerage commission for procuring a purchaser for defendant's Broadwater Trailer Court, $2,450 as the brokerage commission for procuring a purchaser for defendant's Applegate property, plus reasonable attorney fees and costs. Defendant filed an answer and counterclaim seeking the $500 earnest money deposit made by Courtney B. Atlas and held by plaintiff, plus attorney fees and costs. Plaintiff and defendant instituted discovery and both parties filed motions for summary judgment. On May 20, 1976, the district court issued its order vacating the June 1, 1976, date for trial and ordered:

> "The matter will be submitted to the Court
> for decision on the basis of the record, in-
> cluding all written discovery, as of June 1,
> 1976, by stipulation of counsel, the Court
> reserving the right to hold a hearing on
> factual issues, if necessary."

On August 13, 1976, the district court issued its findings of fact and conclusions of law holding the defendant, by virtue of his acceptance and execution of the contracts entitled

EARNEST MONEY RECEIPT AND AGREEMENT TO SELL AND PURCHASE

" * * * is thereupon obligated to pay the plaintiff broker its commissions, as beyond doubt the plaintiff broker had complied with the terms of its listing agreement and has done all that could be done by it." Judgment was accordingly entered in plaintiff's favor on August 19, 1976, and defendant appealed to this Court.

In defendant's brief on appeal and on oral argument before this Court defendant's counsel contends the sole issue for review is whether the district court erred "in granting Plaintiff's motion for summary judgment and not Defendant's." Apparently defendant's counsel overlooked the effect of the pretrial conference held with the district court on May 20, 1976, and the district court order which provided the matter to be submitted to the district court for decision on the basis of the record, pursuant to the oral stipulations of both parties. For purposes of our discussion, we characterize the district court's judgment as a final judgment on the merits and view defendant's arguments as challenging the sufficiency of the evidence relied on by the district court in its findings of fact, conclusions of law and judgment.

Our resolution of this matter is simplified by a brief summation of the law in the area of a real estate broker's right to compensation for commissions.

It is a generally accepted law that a real estate broker is entitled to commissions when he has, in pursuance of his employment and within the time specified in the contract of employment, procured a purchaser able, ready and willing to purchase the seller's property on the terms and conditions specified in the contract of employment. Roscow v. Bara, 114 Mont. 246, 135 P.2d 364; 12 Am Jur 2d 921, Brokers §182. When

- 5 -

the broker procures a buyer who makes a counteroffer or agrees to terms at variance to the terms specified in the employment contract, the seller has the option of accepting or rejecting the counteroffer. If the seller accepts the counteroffer of the procured buyer, the seller is legally obligated to pay commissions to the broker, either under the terms of the contract of employment or the mutually agreed terms of a contract for sale.

The broker's ability to recover commissions is premised on the broker's ability to accomplish what he undertook to do in his contract of employment. 32 ALR3d 321, section 2. The broker is not entitled to compensation for unsuccessful efforts under his contract of employment, irrespective of how great his efforts were or how meritorious his services. Roscow v. Bara, supra. It is generally necessary to refer to the specific terms of the particular employment contract in order to determine whether or not the broker's duties have been performed.

Plaintiff contends it completed performance under the employment contract when it obtained the signatures of Courtney B. Atlas and Ray R. Buck on the buy/sell agreements, the terms of which were agreed to by defendant. Plaintiff insists that any failure to complete the sale transaction is due to the default or refusal of defendant and is not attributable to the actions of the buyers. In order to resolve what the broker's duties were under the employment contract, we look to the listing agreements which provide:

> "FOR VALUE RECEIVED, you hereby are employed to sell or exchange the property described hereon at the selling price and on the terms noted. You hereby are authorized to accept a deposit on the purchase price. You may, if desired, secure the cooperation of any other broker, or group of brokers, in procuring a sale of said property. In the event that you, or any other brokers cooperating with you, shall find a buyer ready and willing to enter into a deal for said price

and terms, or such other terms and price as I may accept, or that during your employment you place me in contact with a buyer to or through whom at any time within 90 days after the termination of said employment I may sell or convey said property, I hereby agree to pay you in cash for your services a commission equal in amount to ____ % of the above stated selling price. I agree to convey said real estate to the purchaser by a good and sufficient deed, to transfer and deliver said personal property, if any, by good and sufficient bill of sale and to furnish title insurance insuring marketable title to said real estate and good right to convey. I hereby warrant that the information shown hereon below is true, that I am the owner of said property, that my title thereto is a good and marketable title, that the same is free of encumbrances except as shown hereafter under "Financial Details" and except taxes levied on said property for the current tax year which are to be pro rated between the seller and buyer. In case of an exchange, I have no objection to your representing and accepting compensation from the other party to the exchange as well as myself. I hereby authorize you and your customers to enter any part of said property at any reasonable time to show same. Also, I authorize you, at any time, to fill in and complete all or any part of the "Informative Data" below, except financial details. This agreement expires at midnight on _____, 19____, but I further allow you a reasonable time thereafter to close any deal on which earnest money is then deposited. In case of suit or action on this contract, I agree to pay such additional sum as the court, both trial and appellate, may adjudge reasonable as plaintiff's attorneys fees. It is further agreed that my signature affixed to the renewal clause below shall have the effect of renewing and extending your employment to a new date to be fixed by me on the same terms and all with the same effect as if the said new date had been fixed above as the expiration date of your employment.

"THIS LISTING IS AN EXCLUSIVE LISTING and you hereby are granted the absolute, sole and exclusive right to sell or exchange the said described property. In the event of any sale, by me or any other person, or of exchange or conveyance of said property, or any part thereof, during the term of your exclusive employment, or in case I withdraw the authority hereby given prior to said expiration date, I agree to pay you the said commission just the same as if a sale had actually been consummated by you." (Emphasis added.)

We note the distinction between a brokerage contract which requires a broker to merely find a purchaser and a brokerage contract which requires a broker to sell, make or effect a sale.

In the first case the broker earns his commission when he procures a buyer able, ready and willing to purchase on the seller's terms. A broker employed to sell or effect a sale does not earn his commission until he completes the sale. Completion of the sale, where real property is involved, amounts to payment of the purchase price and conveyance of title. O'Neill v. Wall, 103 Mont. 388, 62 P.2d 672.

The employment contract or listing agreement in the present case provides for the broker's employment to "sell or exchange the property described hereon * * * THIS LISTING IS AN EXCLUSIVE LISTING and you hereby are granted the absolute, sole and exclusive right to sell or exchange the property." The plain and clear meaning of the language in the listing agreement specifies a contract to sell or effect a sale, not a contract merely requiring the broker to find a purchaser. In order for plaintiff to recover commissions in the present case it must have completed the sale of the properties owned by defendant.

In determining whether the sales were completed we must look to the provisions of the buy/sell agreements and the actions of the parties. The buy/sell agreement for the Applegate property specified Courtney B. Atlas as the purchaser and depositer of $500 earnest money. On May 30, 1975, Atlas refused to sign a sale contract or otherwise complete the sale in accordance with the buy/sell agreement. In lieu of Courtney B. Atlas' performance under the buy/sell agreement, Ms. Atlas was offered as a signatory to all closing papers and the contract for deed. We fail to find merit in plaintiff's argument that the substitution of Ms. Atlas benefited defendant in that defendant gained "an additional signatory to the obligation". Courtney B. Atlas was the contracted purchaser and no party except Courtney B. Atlas was entitled to perform under the buy/sell

agreement, absent the assignment of Courtney B. Atlas' rights under the contract with the written permission of defendant. We fail to find any legal compulsion which would compel defendant to accept a substituted purchaser. The failure of Courtney B. Atlas to perform under the buy/sell agreement amounted to a material breach of contract and plaintiff's attempt to perform under the listing agreement was defeated.

The buy/sell agreement for the Broadwater Trailer Court was a conditional contract, i.e., the buy/sell agreement contained the condition precedent of "the easement being granted and recorded for the disputed western boundary line". The conditional contract became binding only in the event the easement was granted and recorded. Cochran v. Ellsworth, 272 P.2d 904, 126 C.A.2d 429; Blaine v. Stinger, 290 P.2d 732, 79 Ariz. 376; Diamond v. Haydis, 356 P.2d 643, 88 Ariz. 326. Since no evidence was ever presented that the easement was granted and recorded, the legal effect is that no binding contract was ever consummated between defendant and Ray R. Buck. Plaintiff's attempt to perform under the listing agreement failed.

The plaintiff failed to accomplish what he undertook to do as set forth in his contracts of employment with defendant and plaintiff is neither entitled to brokerage commissions for his unsuccessful efforts nor reasonable attorney fees for plaintiff's prosecution of the two actions.

Lastly, we consider the subject of the $500 earnest money deposit made by Courtney B. Atlas. Atlas' failure to perform under the terms of the buy/sell agreement amounted to a material breach of contract and pursuant to the terms of the buy/sell agreement "said earnest money shall be forfeited to the seller as liquidated damages * * *". The buy/sell agreement further provides:

> "In the event of a forfeiture of the deposit
> as above provided, the said deposit shall be
> used to pay the agents incurred expenses
> related to this sale and the balance shall be
> apportioned to the seller and agent equally,
> provided the amount to the agent shall not
> exceed the agreed commission."

Therefore, we remand this matter to the district court for determination of any "agents incurred expense related to this sale", the balance of the deposit to be equally apportioned between plaintiff and defendant.

The judgment of the district court is reversed and the cause is remanded to the district court for further consideration consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices