No. 80-70

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

TOM MATHER, d/b/a MATHER &
ASSOCIATES, MICHAEL PAUL,
d/b/a AMERICAN PROPERTIES,

Plaintiffs and Respondents,

vs.

LARRY K. DUNSTAN and JACQUELINE
DUNSTAN, DALE ANDERSON, RANDAL
W. ANDERSON, and GUARANTY TITLE COMPANY,

Defendants and Appellants.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade.
Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

For Appellants:

Alexander and Baucus, Great Falls, Montana
Ward E. Taleff argued, Great Falls, Montana

For Respondents:

Hartelius and Associates, Great Falls, Montana
Michael Smartt argued, Great Falls, Montana

Submitted: September 11, 1980

Decided: JAN 27 1981

Filed: JAN 27 1981

Thomas J. Kearney
_____ Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendants appeal from an order of the Cascade County District Court refusing to dissolve a writ of attachment directed at tying up proceeds of a house sale in order to assure that money will be there to pay a real estate commission if the plaintiff real estate agents prevail in the underlying lawsuit.

Defendants raise many issues for review and several merit a reversal and order dissolving the writ of attachment. We confine our opinion, however, to our determination that the plaintiff real estate agents failed to comply with section 27-18-203, MCA, by failing to allege that a debt was then owed, which means that the writ of attachment cannot stand.

Randal W. and Dale Anderson, two of the defendants here, are the sellers of a house. Larry K. and Jacqueline Dunstan, the two remaining defendants, are the buyers of the house. The plaintiff real estate agents allege that the sellers and buyers violated a real estate listing agreement and buy-sell agreement, and that in doing so they had the desire to deprive the agents of their six percent real estate commission.

The sellers listed their house on July 5, 1979, with Tom Mather, a real estate agent. The listing agreement gave the agent or any member of the multiple listing service, the exclusive right to sell the house, and provided that the agent was entitled to a six percent commission when he met his obligations under the contract. This agreement, which expired on October 6, 1979, provided up to 60 extra days to close any deal on which earnest money had been paid.

On July 11, 1979, American Properties, a member of the multiple listing services, and one of the plaintiffs here,

arranged a prospective sale to the buyers. The sellers, buyers, and American Properties, signed a buy-sell agreement that was to expire in 30 days, although it allowed a 30-day extension. This agreement also provided for the six percent real estate commission. Another condition was that the sale was contingent on the review and approval of the buyer's wife, Jacqueline Dunstan.

We are unable to tell what happened over the next three months, except to state that for some reason a dispute arose between the sellers and the real estate agents. In December, the real estate agents learned that the sale between the Andersons and the Dunstans was going to take place without the participation of the agents. The agents feared they would lose a commission and therefore filed a lawsuit against the sellers and buyers, in essence claiming they had been cheated out of their commission. The real estate agents also obtained an ex parte writ of attachment, which was aimed at holding a portion of the house sale proceeds to satisfy the six percent sales commission.

After learning of the writ of attachment, both the sellers and buyers filed motions in trial court aimed at quashing the writ of attachment. They alleged several grounds, but after a hearing, the trial court denied all grounds and ordered that the writ of attachment remain in effect pending the outcome of the lawsuit. The sellers and buyers appeal from this order. As we stated earlier, the writ was improperly issued for several reasons, but it is sufficient here to confine our discussion to the failure of the real estate agents to allege in the supporting affidavits, facts showing that a debt was then owed.

The basis for obtaining the prejudgment writ of attachment, was apparently section 27-18-203, MCA, which provides in pertinent part:

-3-

"Actions may be commenced and writs of attach-
ment issued upon any debt for the payment of
money . . . before the same shall have become
due when it shall appear by the affidavit, in
addition to what is required in 27-18-202:

"(1)  that the defendant is leaving or is about
to leave the state, taking with him property,
moneys . . . or

"(2)  that the defendant is disposing of his
property or is about to dispose of his property,
subject to execution, for the purpose of defrauding
his creditors."

Plaintiff real estate agents peg their case on subsection 2
of this statute.

Two questions are presented here. Whether the affidavit
provided sufficient evidentiary facts to establish that a
debt was owed to the real estate commissioners--that is,
that the sellers and buyers owed a six percent commission to
the real estate agents; and whether sufficient facts were
contained in the affidavit to show that the defendants were
disposing of or about to dispose of the proceeds of the real
estate sale for the purpose of defrauding the real estate
agents.

In the affidavit and at the hearing, the real estate
agents repeatedly stated that there was no debt until the
sale was made. Therefore, they took the position that they
were entitled to the commission only when the sale was
closed between the Andersons and the Dunstans. There was no
allegation and absolutely no evidence presented in the
affidavit that the sale had actually been closed. This
being the case, they had no right to obtain the writ of
attachment, for the statute clearly specifies that a debt
must be owed, even though it may not yet be due.

We note that the real estate agents arguments on appeal are
not the same as their arguments in trial court on the question
of whether the buyers and sellers owed the commission to the

-4-

real estate agents. Here, on the basis of Diehl & Associates, Inc. v. Houtchens (1977), 173 Mont. 372, 567 P.2d 930, the agents argue now that they were entitled to the commission once they found a ready, willing and able buyer, and that it did not depend on an actual closing. Assuming this to be true, they cannot avail themselves of this position now when they failed to make these allegations before the trial court as a basis of obtaining the writ of attachment. The real estate agents cannot breathe new life into the attachment by telling us what they should have told the trial court before the writ was issued.

The agents had to come under either section 27-18-203(1) or (2) in order to avail themselves of a prejudgment writ of attachment. They chose subsection (2) as that which gave them the right to obtain the writ. Therefore, they were required in their affidavits to set out an evidentiary basis to conclude that the buyers and sellers here had either disposed of the sales monies, including the commission, or were about to do so and that the purpose was to defraud creditors. They clearly failed in this.

The affidavit alleged generally that the real estate agents had learned that the sellers and buyers had independently arranged for a sale of the house and that they had changed closing agents. With no evidentiary basis stated at all, it alleged that the sellers had taken a course of conduct with the intent to defraud the real estate agents of their commission. With no evidentiary basis stated at all, it further alleged that the seller would dispose of the sales price money, including the commission, unless a writ of attachment was issued. There are simply no evidentiary facts stated that lead one to conclude that either the sellers or buyers intended to dispose of the money and had the purpose of defrauding the real estate agents out of their commission.

-5-

The affidavit alleged generally that the real estate agents had learned that the sellers and buyers had independently arranged for a sale of the house and had changed closing agents. It also stated generally that the sellers and buyers had refused to deposit the six percent commission with a trust fund pending the outcome of a lawsuit directed at deciding whether the agents were entitled to the commission. With no evidentiary facts stated, the affidavit alleged that the sellers and buyers had taken a course of conduct designed to defraud the real estate agents of their commission. With no evidentiary facts stated, the affidavit also alleged that the sellers would dispose of the sales money, together with the six percent commission, unless a writ of attachment was issued. No court could reasonably conclude from these statements that the sellers or buyers intended to dispose of the money and to defraud the real estate agents out of their commission.

The order refusing to dissolve the writ of attachment is reversed. The trial court is directed to enter an order dissolving the writ of attachment.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

This case was submitted prior to January 5, 1981.