No. 84-269

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

RONALD TAYLOR, d/b/a TAYLOR & ASSOCIATES
REAL ESTATE,

Plaintiff and Respondent,

-vs-

ALEX WEINGART, JR., Individually and as
Personal Representative of the Estate of
RITA WEINGART and NORMA J. WEINGART,

Defendant and Appellant.

_____

APPEAL FROM: District Court of the Tenth Judicial District,
In and for the County of Petroleum,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert L. Johnson, Lewistown, Montana

For Respondent:

Alexander & Baucus, Great Falls, Montana

_____

Submitted on Briefs: Nov. 20, 1984

Decided:   December 28, 1984

Filed:DEC 28 1984

_Ethel M. Harrison_
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Alex Weingart, Jr., individually and as personal representative of the estate of Rita Weingart, and Norma Weingart, hereinafter Weingart, appeal from an order of the District Court of the Tenth Judicial District in Petroleum County granting summary judgment to ~~Robert~~ Ronald Taylor who sued to enforce a real estate brokerage commission contract. Since we find no material issues of fact in dispute and the District Court's ruling correct as a matter of law, we affirm.

Sometime prior to December 17, 1981, Ron Taylor, a licensed real estate broker contacted Alex Weingart and inquired whether Weingart would be interested in selling the ranch. Weingart expressed interest in selling the ranch and orally agreed to pay Taylor a commission if the ranch were sold. Taylor procured a potential buyer, C. W. Taylor Partnership, for the ranch. The partnership consisted of Charles R. Taylor, Ronald Taylor's brother, and several other investors.

On December 17, 1981, Ronald Taylor, Weingart and C. W. Taylor Partnership entered into an agreement entitled Receipt and Agreement to Buy and Sell. All of the parties to the agreement signed the document. The agreement recited a purchase price of $1,750,000 payable as follows: $50,000 earnest money received on December 17, 1981, $160,000 on closing, $210,000 on or before May 21, 1982, a note bearing interest at 9% tendered on or before May 21, 1982 and due on January 15, 1983 for a total downpayment of $525,000. The balance was to be paid in installments over the next 25 years. Just above Weingart's signature at the bottom of the

form on which the contract is written appears the following clause:

> "For valuable consideration I/we agree to sell and convey to the purchaser the above described property on the terms and conditions hereinabove stated and agree to pay the above named agent a commission amounting to five percent of the above mentioned selling price for services rendered in the transaction. In the event of a forfeiture of the deposit as above provided, the said deposit shall be paid or retained by the agent to the extent of the agreed upon commission with residue to the seller. I/we authorize said agent to pay out of the cash proceeds of the sale the expense of furnishing evidence of title, of recording fees and revenue stamps, if any, as well as any encumberances on said premises payable by me at/or before the closing. I/we acknowledge the receipt of a copy of this Receipt and Agreement bearing my signature and that of the purchaser named above." (Emphasis added.)

Charles Taylor tendered a check drawn on the account of C. W. Taylor Limited Partnership to broker Ronald Taylor before the Weingarts signed the agreement. Weingart acknowledged the payment.

On December 30, 1981 Weingart and C. W. Taylor Partnership executed a formal Land Sale Contract. The document, which was drafted by Weingart's attorney, consisted of eight-type written pages spelling out in detail the rights and duties of the parties. The terms of payment were exactly the same as agreed upon in the Receipt and Agreement. The Land Sale Contact contained a default provision which gave the seller, Weingart, the right to declare the balance of the payments due if the buyer defaulted on a payment and to strict foreclosure if that balance was not paid. The buyer paid the $160,000 due on December 30, 1981 when the Land Sale Contract was executed.

Broker Taylor retained $43,750 of the $50,000 check entrusted to him. This sum represented one-half of $87,500, the commission on the purchase price of $1,750,000. After

- 3 -

paying the agreed expenses, he remitted the balance to Weingart.

C. W. Taylor Partnership was unable to make its $210,000 payment on May 21, 1982. Weingart then caused a notice of default to be issued and after the curative period set forth in the Land Sales Contract lapsed, Weingart reacquired the property from C. W. Taylor Partnership by quit claim deed.

Broker Taylor instituted this suit on June 7, 1983 seeking to recover $43,750, the balance of his commission due. On April 11, 1984, after a period of discovery and a hearing, the District Court granted plaintiff Taylor's motion for summary judgment and awarded him $43,750 plus statutory interest. Defendant Weingart appeals.

It is a generally accepted law that a real estate broker is entitled to commissions when he has in pursuance of his employment and within the time specified in his contract procured a purchaser able, ready, and willing to purchase the seller's property on the terms specified in the employment contract. The broker's ability to recover commissions is premised on the broker's ability to accomplish what he undertook to do in the contract of employment. The broker is not entitled to compensation for unsuccessful efforts under his contract irrespective of how great his efforts or how meritorious his services. See Rosco v. Bara (1943), 114 Mont. 246, 135 P.2d 364. In contrast, the broker may receive a commission disproportionate to his efforts on a particular sale. It is generally necessary to refer to the specific terms of a particular employment contract in order to determine whether or not the brokers duties have been performed. Diehl and Associates, Inc. v. Houtchens (1977), 173 Mont. 372, 377, 567

- 4 -

P.2d 930, 934; Ehly v. Cady (Mont. 1984), ___ P.2d ___,, 41 St. Rep. 1611, 1623.

The listing agreement in this case was made part of the Receipt and Agreement Contract. The agreement complied with section 28-2-903(1)(e), MCA, requiring that such contracts be evidenced by a writing. There is no question that the parties agreed to this brokerage commission contract. Appellant contends that the language contained in this listing agreement requires that a sale take place before a brokerage commission is earned. We agree. This Court recently considered this very same language in Ehly v. Cady (Mont. 1984), ___ P.2d ___, 41 St.Rep. 1611, 1624. We stated that the language from the buy/sell agreement assumes that the real estate commission would be earned when the sale was made.

Appellant now contends that no sale was effected so no commission was earned. Appellant argues that C. W. Taylor Partnership lacked the legal capacity to contract and that a sale cannot be complete until the entire purchase price is paid.

We find that C. W. Taylor Partnership and Charles Taylor possessed the legal capacity to contract. Neither were crippled by infancy, insanity or other legal disability. Weingart accepted C. W. Taylor Partnership as a purchaser. Appellants had the opportunity to investigate the partnership and if they had discovered the partnership to be unsound they could have refused to perform. Broker Taylor would not have been entitled to a commission because a sale was not effected and the seller had rightfully refused to perform. Such is not the case here.

Appellants entered into a binding sales contract. The deal was closed and the parties agreed to all the terms

contained in the agreement. The appellants accepted a total of $210,000 toward the purchase price. In this case a sale was effected on December 30, 1981.

Furthermore appellants declared a default and foreclosed on the property under the terms of the sales contract.

Appellants retained $210,000 under the authority of the Land Sales Contract. For the appellants to argue now that there was no final sale for the purpose of avoiding the payment of Taylor's commission while capitalizing on the default of the buyer is incongruent.

Appellants further contend that the commission earned by Taylor, if any, was limited to the amount of the earnest money received. Appellants misread the agreement which provides:

> "In the event of forefeiture of the deposit as provided the said deposit shall be paid or retained by the agent to the extent of the agreed upon commission with residue to the seller."

This language is intended to protect the broker by authorizing him to take his entire commission out of the deposit before remitting any portion to the seller. The clause can only be construed to place a cap on the broker's commission if the deposit may the only amount given by the buyer before default and such amount is less than the brokerage commission. This is not the case here. The appellants realized a total of $210,000 which exceeded the brokerage commission by $122,500. The terms of the listing agreement offer no relief to the seller under these circumstances.

Appellants contend that a material issue of fact exists concerning their contention at the hearing on respondent's motion for summary judgment that Ronald Taylor waived the balance of his brokerage fee. Appellant asserts that Taylor

orally agreed to waive the fee in return for the opportunity to relist appellant's property after they regained title and possession following the default of C. W. Taylor Partnership. The evidence is clear that this agreement was not reduced to writing or signed by the parties. The contract was never performed. Section 28-2-903(1)(e), MCA, requires that a broker's contract to sell land be evidenced by a writing and section 28-2-1602, MCA, requires that modification of a written agreement be in writing or by an executed oral agreement. Appellants' contention must fail as a matter of law and summary judgment on this issue is appropriate.

Finally, appellants contend that Ronald Taylor breached a fiduciary duty owed to them. The record does not sustain this contention. The mere fact that Ronald Taylor and Charles Taylor are brothers does not automatically prove a breach of fiduciary duty. The sellers were apprised of all the relevant details concerning the transaction and were represented by counsel throughout. We discussed the fiduciary duty owed to a seller by a real estate broker in Nardi v. Smalley (Mont. 1982), 643 P.2d 228, 39 St.Rep. 606 and First Trust Co. v. McKenna (Mont. 1980), 614 P.2d 1027, 37 St.Rep. 1026. These cases stand for the proposition that the fidiuciary duty is breached if (1) a seller is foiled or deceived by the contract or does not understand the contract or (2) full disclosure of all pertinent facts is not made by the broker. This is not the case here.

Furthermore, there has been no showing that Weingart suffered any damage by breach of a fiduciary duty. Weingart received a fair contract price for the property. It appears that Weingart not only did not suffer monetary harm from this transaction but derived a profit from it. See Ehly, supra.

- 7 -

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 8 -