No. 92-272

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

JOSHUA SAYEGUSA,

      Plaintiff and Respondent,

v.

RANDY A. ROGERS, d/b/a
BIG SKY TOPPERS,

      Defendant and Appellant.

FILED

FEB 3 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Randy A. Rogers, Pro Se, Helena, Montana

      For Respondent:

          Joshua Sayegusa, Pro Se, Helena, Montana

Submitted on Briefs:  October 29, 1992

Decided: February 3, 1993

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Defendant and appellant Randy Rogers (seller), appeals from an adverse decision of the District Court of the First Judicial District, Lewis and Clark County. Plaintiff and respondent Joshua Sayegusa, a licensed real estate broker (broker), brought suit seeking to recover a real estate broker's commission. The District Court granted summary judgment in favor of the broker, concluding that seller was obligated to pay the commission, even though the proposed sale did not go through. Seller appeals. We affirm.

The only issue before the Court is whether the District Court erred in granting broker's motion for summary judgment.

On March 29, 1991, seller entered into an exclusive listing contract with broker to sell Big Sky Toppers and its inventory and equipment. Broker found two potential buyers of seller's business. In April 1991, the potential buyers offered $80,000 for the business, which included certain items of inventory and equipment. The offer of $80,000 was in response to seller's asking price. On April 20, 1991, the buyers signed an agreement to sell and purchase the business. Seller counteroffered on April 22, 1992, with respect to certain terms of the agreement, and this counteroffer was accepted by the buyers on the same day.

The agreement included a closing date of May 15, 1991. Closing did not occur on May 15, 1991. Several days later, the buyers expressed concern that the inventory was less than what had been stated in the purchase and sale contract. Both parties agreed that the inventory was less and that a reduction in the price was

2

appropriate. The parties could not agree on an appropriate reduction and the transaction never closed. Broker brought this action alleging that he was entitled to his commission even though the sale did not go through. The District Court agreed and granted summary judgment in favor of broker.

A district court judge may grant summary judgment when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.

Sherrodd, Inc. v. Morrison-Knudsen Co. (1991), 249 Mont. 282, 284, 815 P.2d 1135, 1136; Rule 56(c), M.R.Civ.P. Upon reviewing a grant or denial of a motion for summary judgment, this Court applies the same standard as the district court.

The provision in the contract pertaining to the broker's commission provides in part that:

> FOR VALUE RECEIVED, you and your agents are <u>employed to find a buyer ready and willing to purchase</u> or exchange the property described above at the price and terms noted or at such other price and terms as I/we accept. You are authorized to accept a deposit on the purchase price. In the event I/we sell or exchange the property, or <u>a written agreement is executed for the sale or exchange of the property during the term of this agreement, I/we agree to pay you in cash a commission equal to 10% of the selling price.</u> [Emphasis added.]

This Court's role in interpreting contracts is to construe the instrument according to its terms and this Court may neither insert nor omit terms to the contract. Martin v. Laurel Cable TV, Inc. (1985), 215 Mont. 229, 696 P.2d 454; § 1-4-101, MCA. In situations in which the terms of the contract are clear and unambiguous, it is

3

the duty of the court to enforce the contract as the parties intended. First Sec. Bank v. Vander Pas (1991), 250 Mont. 148, 818 P.2d 384.

In this case, the District Court concluded that the language of the listing agreement was clear and unambiguous as to broker's right to his commission. Broker was entitled to a commission upon procuring a buyer "ready and willing to purchase" and who entered into a written agreement to make the purchase. The District Court found that the broker in this instance satisfied the requirements in the listing agreement. The District Court concluded that there were no genuine issues of material fact regarding this question and granted summary judgment in favor of broker. We agree with the District Court that the result is unfortunate. We also agree that the result was mandated by the clear and unambiguous language of the listing agreement and the well-established law in this area.

Seller argues that the buyers backed out of the deal through no fault on his part. Additionally, seller argues that the buyers are now in control of the premises, as well as his equipment and inventory. Seller fails to recognize, however, that the present litigation involves the listing agreement between himself and the broker. The rights or obligations of the buyers, under their contract to purchase the business, are not at issue here.

It is well-established law in Montana that a broker's right to recover a commission is conditioned on the broker's ability to accomplish that which he or she undertook to do in the contract of employment. Diehl and Associates, Inc. v. Houtchens (1977), 173

4

Mont. 372, 567 P.2d 930; First Trust Co. of Montana v. McKenna (1980), 188 Mont. 534, 614 P.2d 1027; Ehly v. Cady (1984), 212 Mont. 82, 687 P.2d 687. Pursuant to the clear and unambiguous language of the listing agreement in this case, the broker became entitled to his commission when the buyers entered into a written contract to purchase the business for the price requested by the seller. The District Court noted that:

> [Seller's] contractual obligation [under the listing agreement] overrides the unfortunate result of the buyers' backing out of the deal through no fault of [seller]. It is one of the risks taken when entering into such a listing contract.

It is indeed unfortunate that seller is required to pay a commission even though the sale did not occur, but the language of the listing agreement and past precedent of this Court require such a result.

As a final matter, appellant points out that on June 12, 1991, respondent dismissed the complaint against codefendant Robert V. Rogers. A review of the District Court record in this action indicates that Robert V. Rogers was dismissed from the action and that he was not brought in again at a later date. Therefore, Robert V. Rogers was not a party to this case and is not responsible for the judgment entered by the District Court against appellant Randy A. Rogers.

The decision of the District Court to grant summary judgment in favor of the broker is affirmed.

_____
Justice

5

We concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_____

_____
Justices

Justice Terry N. Trieweiler dissenting.

I respectfully dissent from the opinion of the majority.

The listing agreement upon which the plaintiff relies is neither clear nor unambiguous and should be construed in favor of the defendant. Such a construction would also produce a more reasonable result.

For example, the plaintiff's listing agreement provided that he was employed "to find a buyer ready and willing to purchase or exchange the property . . . ." Did that simply mean ready and willing to sign a meaningless and unenforceable agreement to sell and purchase? Or, did it mean ready and willing to purchase the property by completing the transaction at the time set for closing? Keeping in mind that brokers in general, and this broker in particular, are to be paid a percentage of the purchase price, and that the purchase price is not realized until closing, the only reasonable interpretation of this provision is that the broker was retained to find a buyer who was ready and willing to purchase the property at the time of closing. Otherwise, the seller has realized no income with which to pay the brokerage fee and there would be no limit on the mischief that could be engaged in by real estate brokers. For example, why require that there be a buy/sell agreement before the broker's obligation is satisfied? Why not simply require that a broker produce someone off the street who says they are "ready and willing to purchase" and leave all other considerations up to the unfortunate seller?

7

At best, what amounts to a "ready and willing purchaser" is ambiguous and should be construed in favor of the seller because it was the plaintiff realtor who prepared the contract and against whose interest any ambiguities must be construed.

There is a second ambiguity in the additional provision of the listing agreement that is relied upon by the majority. It is true that that agreement clearly provides that in the event a written agreement is entered into for the exchange of the property, the realtor is entitled to a commission. However, that commission is defined as ten percent of the "selling price." What does selling price mean? Does it mean a price that is agreed upon in a buy/sell agreement which is never performed? Or does it mean that price at which the property is actually sold? Again, considering the customary manner in which brokerage fees are paid, it makes no sense to interpret "selling price" to mean a price which is never paid. The realtor prepared and submitted the brokerage agreement and if he intended the commission to equal ten percent of the price agreed to, it would have been easy enough to make that provision clear in the agreement. It appears to me that by linking the commission to the "selling price," it was the intention of the parties that if there was no sale there would be no commission. However, regardless of the intention of the parties, at best, the term creates an ambiguity regarding the parties' intentions and should be construed against the realtor who prepared the contract.

Neither do I find any of the authorities relied upon by the majority to be persuasive in support of the majority's conclusion.

8

In fact, in *Diehl and Associates, Inc. v. Houtchens* (1977), 173 Mont. 372, 567 P.2d 930, this Court arrived at an opposite conclusion based upon a real estate listing agreement that included language very similar to the language included in this agreement. In *First Trust Company of Montana v. McKenna* (1980), 188 Mont. 534, 614 P.2d 1027, we reversed a district court judgment which awarded a commission to a real estate broker. However, that case was decided for reasons other than those discussed in this case. Finally, in *Ehly v. Cady* (1984), 212 Mont. 82, 687 P.2d 687, we did affirm an award to a real estate broker, even though the sale was never consummated. However, in that case, there was a specific finding that the sale was prevented by the seller's refusal to perform according to the terms of the buy/sell agreement. In this case, there is a question of fact regarding which of the parties was responsible for the nonperformance of the agreement to sell and purchase. That issue of fact could not be decided by summary judgment.

As a result of this decision, many unsuspecting sellers of real estate will assume obligations to pay a commission where a commission was never intended, where no actual benefit was provided by the broker, and where there were no sale proceeds from which to pay the commission. This result is not only unfortunate and unfair, it is contrary to the law of contracts and poor public policy. For these reasons, I would reverse the District Court and remand this case for trial to determine which of the parties prevented the performance of the agreement to sell and purchase.

9

If the defendant was willing to perform, but was prevented from doing so by the buyer's refusal to honor the terms of the written agreement, then I would conclude that the plaintiff is entitled to no commission because the purchaser found by the plaintiff was not "ready and willing to purchase." However, if the buyer was willing to complete the sale but was prevented from doing so by the seller's refusal to comply with the terms of their written agreement, then I would conclude that the broker had performed his obligation under the listing agreement and was entitled to his commission.

_____
Justice

February 3, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Randy A. Rogers
1755 Walnut
Helena, MT  59624

Joshua Sayegusa
118 South Benton Ave.
Helena, MT  59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy