JUSTICE TRIEWEILER
dissenting.
I respectfully dissent from the opinion of the majority.
The listing agreement upon which the plaintiff relies is neither clear nor unambiguous and should be construed in favor of the defendant. Such a construction would also produce a more reasonable result.
For example, the plaintiff’s listing agreement provided that he was employed “to find a buyer ready and willing to purchase or exchange the property....” Did that simply mean ready and willing to sign a meaningless and unenforceable agreement to sell and purchase? Or, did it mean ready and willing to purchase the property by completing the transaction at the time set for closing? Keeping in mind that brokers in general, and this broker in particular, are to be paid a percentage of the purchase price, and that the purchase price is not realized until closing, the only reasonable interpretation of this provision is that the broker was retained to find a buyer who was ready and willing to purchase the property at the time of closing. Otherwise, the seller has realized no income with which to pay the brokerage fee and there would be no limit on the mischief that could be engaged in by real estate brokers. For example, why require that *273 there be a buy/sell agreement before the broker’s obligation is satisfied? Why not simply require that a broker produce someone off the street who says they are “ready and willing to purchase” and leave all other considerations up to the unfortunate seller?
At best, what amounts to a “ready and willing purchaser” is ambiguous and should be construed in favor of the seller because it was the plaintiff realtor who prepared the contract and against whose interest any ambiguities must be construed.
There is a second ambiguity in the additional provision of the listing agreement that is relied upon by the majority. It is true that that agreement clearly provides that in the event a written agreement is entered into for the exchange of the property, the realtor is entitled to a commission. However, that commission is defined as ten percent of the “selling price.” "What does selling price mean? Does it mean a price that is agreed upon in a buy/sell agreement which is never performed? Or does it mean that price at which the property is actually sold? Again, considering the customary manner in which brokerage fees are paid, it makes no sense to interpret “selling price” to mean a price which is never paid. The realtor prepared and submitted the brokerage agreement and if he intended the commission to equal ten percent of the price agreed to, it would have been easy enough to make that provision clear in the agreement. It appears to me that by linking the commission to the “selling price,” it was the intention of the parties that if there was no sale there would be no commission. However, regardless of the intention of the parties, at best, the term creates an ambiguity regarding the parties’ intentions and should be construed against the realtor who prepared the contract.
Neither do I find any of the authorities relied upon by the majority to be persuasive in support of the majority’s conclusion. In fact, in Diehl and Associates, Inc. v. Houtchens (1977), 173 Mont. 372, 567 P.2d 930, this Court arrived at an opposite conclusion based upon a real estate listing agreement that included language very similar to the language included in this agreement. In First Trust Company of Montana v. McKenna (1980), 188 Mont. 534, 614 P.2d 1027, we reversed a district court judgment which awarded a commission to a real estate broker. However, that case was decided for reasons other than those discussed in this case. Finally, in Ehly v. Cady (1984), 212 Mont. 82, 687 P.2d 687, we did affirm an award to a real estate broker, even though the sale was never consummated. However, in that case, there was a specific finding that the sale was prevented by the seller’s *274 refusal to perform according to the terms of the buy/sell agreement. In this case, there is a question of fact regarding which of the parties was responsible for the nonperformance of the agreement to sell and purchase. That issue of fact could not be decided by summary judgment.
As a result of this decision, many unsuspecting sellers of real estate will assume obligations to pay a commission where a commission was never intended, where no actual benefit was provided by the broker, and where there were no sale proceeds from which to pay the commission. This result is not only unfortunate and unfair, it is contrary to the law of contracts and poor public policy. For these reasons, I would reverse the District Court and remand this case for trial to determine which of the parties prevented the performance of the agreement to sell and purchase. If the defendant was willing to perform, but was prevented from doing so by the buyer’s refusal to honor the terms of the written agreement, then I would conclude that the plaintiff is entitled to no commission because the purchaser found by the plaintiff was not “ready and willing to purchase.” However, if the buyer was willing to complete the sale but was prevented from doing so by the seller’s refusal to comply with the terms of their written agreement, then I would conclude that the broker had performed his obligation under the fisting agreement and was entitled to his commission.